UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
MAIN STREET AMERICA           :
ASSURANCE COMPANY             :     Civil No. 3:18CV02073(JCH)
                              :
v.                            :
                              :
VINCENT SAVALLE and           :
LEE WINAKOR                   :     November 15, 2019
                              :
------------------------------x
```

### RULING ON DEFENDANT SAVALLE'S MOTION FOR RECONSIDERATION [Doc. #72]

Pending before the Court is a motion [Doc. #72] by defendant Vincent Savalle ("Savalle") seeking reconsideration of the Court's November 5, 2019, Ruling denying Savalle's renewed motion to quash a subpoena issued by plaintiff Main Street America Assurance Company ("Main Street") to non-party Teri Davis. [Doc. #69]. For the reasons stated below, the Court **GRANTS** Savalle's motion for reconsideration [**Doc. #72**], and adheres to its prior Ruling.

### I. Background

The Court presumes familiarity with the background of this matter which is set forth in the Ruling on Savalle's renewed motion to quash. See Doc. #69 at 1-3. However, the Court briefly addresses the background leading to the present motion for reconsideration.

1

On September 4, 2019, Main Street noticed the issuance of a subpoena to non-party Teri Davis ("Davis"), commanding her to appear and testify at a deposition, and to produce the documents identified on Schedule A to the subpoena. See Doc. #63-1. Schedule A seeks:

> Any and all documents, records, correspondence, memorandum, notes and/or logs regarding the insurance you obtained for or on behalf of Vincent Savalle from 2010 to the present; the work Vincent Savalle performed at 217 Ledgen Wood Road (now known as 24 Island Road) in North Stonington, Connecticut; the lawsuit captioned Lee Winakor v. Vincent Savalle, New London Superior Court, Civil Action No. KNL-CV15-6024218-S; or the instant litigation captioned Main Street America Assurance Co. v. Vincent Savalle, et al., including but not limited to correspondence between you, on the one side, and the following individuals/entities on the other side: Attorney James Lee, Attorney Frank Liberty, Charles G. Marcus Agency, Inc., Main Street America Assurance Company, and/or Karl Butzgy. You are further commanded to bring any notations, diaries, logs, notes, notations, records, memorandum regarding such communications and/or oral conversations or meetings with such individuals/entities.

Doc. #63-1 at 6 (sic). The subpoena noticed Davis' deposition for September 20, 2019, at 1:30PM. See id. at 3.

On September 13, 2019, Savalle filed a motion to quash the subpoena. [Doc. #54]. On September 16, 2019, Judge Janet C. Hall referred that motion to the undersigned. [Doc. #56]. On the same date, the Court denied Savalle's motion, without prejudice to re-filing, for failure to comply with the Local Rules. See Doc. #58. The Court ordered counsel for Savalle and counsel for Main Street to engage in a further meet-and-confer conference. See

2

id. To the extent that counsel were unable to resolve the dispute presented in Savalle's motion to quash, then Savalle was to re-file his motion by October 4, 2019. See id. In accordance with that Order, Savalle timely re-filed the motion to quash on October 4, 2019. [Doc. #63]. Main Street filed an objection to Savalle's motion on October 10, 2019. [Doc. #67].

Savalle moved to quash the subpoena served on Davis because it "expressly seeks communications protected by the attorney-client privilege." Doc. #63 at 1. Main Street responded, inter alia, that Savalle "has failed to meet his burden to show that the information and documents sought... are protected by attorney-client privilege." Doc. #67 at 1. Main Street also challenged the sufficiency of Savalle's privilege log. See id. at 1-3. Although Savalle did provide a privilege log with the renewed motion to quash, he did not file any affidavits or other evidence supporting his claim of the attorney-client privilege.

On November 5, 2019, the Court issued a Ruling denying Savalle's renewed motion to quash. [Doc. #69]. In pertinent part, the Court denied Savalle's motion because he "failed to sustain his burden of establishing the applicability of the attorney-client privilege." Doc. #69 at 12. The Court also found that Savalle's privilege log "is deficient and also fails to support his assertion that the attorney-client privilege applies to the emails at issue." Id. at 18.

In seeking reconsideration of the Court's Ruling, Savalle contends that the Court overlooked controlling precedent, namely the Connecticut Supreme Court case of <u>Woodbury Knoll, LLC v. Shipman and Goodwin, LLP</u>, 48 A.3d 16 (Conn. 2012) (hereinafter "<u>Woodbury</u>"). The Court considers Savalle's arguments below.

## II. **Legal Standard**

The legal standards applicable to a motion for reconsideration are well-established:

> A motion for reconsideration is an extraordinary request that is granted only in rare circumstances, such as where the court failed to consider evidence or binding authority. "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995).

<u>Van Buskirk v. United Grp. of Companies, Inc.</u>, 935 F.3d 49, 54 (2d Cir. 2019); <u>see also</u> <u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (citation and quotation marks omitted)); D. Conn. L. Civ. R. 7(c).

A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories,

4

securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (quoting Sequa Corp v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1995)), as amended (July 13, 2012). Nor is it appropriate to use a motion for reconsideration "to plug gaps in an original argument or to argue in the alternative once a decision has been made." Lopez v. Smiley, 375 F. Supp. 2d 19, 21–22 (D. Conn. 2005) (citation and quotation marks omitted).

**III. Discussion**

Although Savalle primarily contends that the Court overlooked controlling precedent, he asserts several other arguments in support of his motion for reconsideration. The Court addresses each in turn.

**A. The Applicability of Woodbury**

Savalle asserts that the Court should reconsider its prior Ruling because it overlooked a controlling Connecticut Supreme Court case, Woodbury.

First, relying on Woodbury, Savalle asserts that his renewed motion to quash should have been granted because the subpoena "clearly embodied a request for privileged materials[,]" and therefore could have been disposed of summarily without any evidentiary showing by Savalle. Doc. #72 at 3-4.

5

The Woodbury case involved a legal malpractice claim brought by plaintiffs against defendant Shipman & Goodwin, LLP ("Shipman"). See Woodbury, 48 A.3d at 19. During the course of the underlying litigation, Shipman issued a subpoena duces tecum to the records custodian of Finn, Dixon, & Herling, LLP ("Finn Dixon"), a law firm which had represented plaintiffs in connection with various foreclosure actions that plaintiffs asserted were the result of Shipman's malpractice. See id. The subpoena directed to Finn Dixon sought the production of, inter alia:

> "[A]ll documents, including without limitation, notes, memoranda, e-mails, pleadings, document production, billing statements, time records, and every other form of written, typewritten, printed or computer-generated material" relating to Finn Dixon's representation of the plaintiffs for the period from October 13, 2004, through December 4, 2009, the date of the subpoena.

Id. at 20. Finn Dixon moved to quash the subpoena at the trial court level, which motion was denied on several grounds. See id. at 21. Finn Dixon argued to the Connecticut Supreme Court "that the trial court abused its discretion when it ordered Finn Dixon to comply with a subpoena that, on its face, clearly requested privileged and protected materials." Id. at 33. The Connecticut Supreme Court "agree[d] with Finn Dixon that the subpoena inappropriately sought materials containing privileged communications[,]" and reiterated a prior holding that "when the confidential status of otherwise discoverable information is

6

apparent, a claim of privilege may be disposed of without further inquiry." Woodbury, 48 A.3d at 33 (footnote omitted).

Savalle contends that in this case, Main Street "seeks a similar trove from [Savalle's] prior and present counsel. The only difference is one of form: instead of seeking the materials directly from counsel, [Main Street] has sought them from Davis." Doc. #72 at 3. The "difference in form[,]" which Savalle attempts to minimize, entirely distinguishes the present matter from the circumstances in Woodbury. Unlike the circumstances in Woodbury, the protected status of the documents sought by Main Street is not readily apparent from the face of the subpoena, because it seeks documents between Savalle's counsel and a third party, that is, Davis. See, e.g., State v. Mark R., 17 A.3d 1, 7 (Conn. 2011) ("The presence of third parties generally destroys the confidentiality of a communication, precluding a claim of privilege."). That circumstance is vastly different from the situation present in Woodbury, where the challenged subpoena specifically sought documents relating to the law firm's representation of plaintiffs. See Woodbury, 48 A.3d at 33. The subpoena at issue here does not seek such obviously privileged materials, but rather an array of documents that are not so clearly protected by the privilege. Thus, the reasoning of Woodbury does not apply to the subpoena here, which on its face, does not clearly request privileged materials. The Woodbury

7

court acknowledged this important distinction in its decision. See Woodbury, 48 A.3d at 34 ("Thus, Babcock and the other cases on which the defendants rely for this proposition are distinguishable, as they all involve instances in which the privileged nature of the materials was not facially apparent. In the present case, by contrast, the subpoena sought any and all materials relating to Finn Dixon's representation of the plaintiffs, which necessarily would include privileged, attorney-client communications."). Accordingly, Savalle's argument in this regard is misplaced.

Second, Savalle appears to assert that he was not required to submit a detailed privilege log to support his claim of privilege. See Doc. #72 at 4-6. In pertinent part, the Woodbury court

> reject[ed] the defendants' suggestion that Finn Dixon had an affirmative obligation to submit a privilege log, detailing the specific materials sought and the reason why they are privileged, in order to maintain the confidentiality of those materials. No provision of the rules of practice, and no decision by this court or the Appellate Court, requires that any person claiming the attorney-client privilege has the burden to provide a privilege log at the time the claim of privilege is made. Instead, the customary practice is that the trial court may order the party claiming the privilege to compile and produce a privilege log, which the opposing party and the trial court will then examine.

Woodbury, 48 A.3d at 34-35.

At the outset of his argument, Savalle asserts: "[T]he Court accepted the proposition that in a diversity case such as

this, state law governs the attorney-client privilege[.]" Doc. #72 at 2 (citing Doc. #68 at 7-8). Savalle is correct -- Connecticut state law governs the substantive question of the applicability of the attorney-client privilege in this diversity case. Federal law, however, governs the procedural aspects of this, and other, diversity cases. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."); accord In re Fosamax Prod. Liab. Litig., 707 F.3d 189, 193 (2d Cir. 2013); Dukes v. NYCERS, 331 F.R.D. 464, 472 (S.D.N.Y. 2019); Moura v. Harleysville Preferred Ins. Co., No. 3:18CV422(VAB), 2019 WL 936590, at *2 (D. Conn. Feb. 26, 2019).

The Woodbury court, in rejecting Shipman's argument concerning the necessity of a privilege log relied on the Connecticut Practice Book. See Woodbury, 48 A.3d at 34-35 (referring to Connecticut rules of practice). The Federal and Local Rules of Civil Procedure in effect in this Court mandate the production of a privilege log where documents are withheld on the basis of privilege. See Fed. R. Civ. P. 26(b)(5)(A); D. Conn. L. Civ. R. 26(e) ("In accordance with Fed. R. Civ. P. 26(b), when a claim of privilege or work product protection is asserted in response to a discovery request for documents or electronically stored information, the party asserting the

privilege or protection **shall** serve on all parties a privilege log." (emphasis added)). As this Court has previously noted in this case: "An essential step in meeting the burden of establishing the existence of a privilege or an immunity from discovery is the production of an adequately detailed privilege log sufficient to enable the demanding party to contest the claim." Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co., 240 F.R.D. 44, 47 (D. Conn. 2007) (citation and quotation marks omitted); accord Davis v. Hunt Leibert Jacobson P.C., No. 3:12CV1102(JBA), 2016 WL 3349629, at *3 (D. Conn. June 10, 2016). Indeed, the Federal Rules of Civil Procedure, and the cases interpreting them, require the production of a privilege log by the party claiming the privilege, even where a discovery request on its face appears to seek privileged information. See, e.g., Sidari v. Orleans Cty., No. 95CV7250(HBS), 2000 WL 33597212, at *2 (W.D.N.Y. Mar. 31, 2000) ("[T]he plaintiff asserts that the material requested is subject to the attorney work-product privilege. On its face, it would appear that at least some of the requested information may be subject to the attorney work-product privilege. ... [E]ven in such cases the party asserting such a privilege is obligated to make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or

protected, will enable other parties to assess the applicability of the privilege or protection." (citation and quotation marks omitted)).

Finally, the Court notes just a few of the countless diversity cases applying state substantive law, and federal procedural law, to the question of attorney-client privilege. See, e.g., Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc., 331 F.R.D. 218, 227–28 (E.D.N.Y. 2019); Safeco Ins. Co. of Am. v. M.E.S., Inc., 289 F.R.D. 41, 46–48 (E.D.N.Y. 2011), on reconsideration in part, No. 09CV3312(ARR)(VMS), 2013 WL 12362006 (Feb. 12, 2013); Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc., No. 05CV5155(SJF)(AKT), 2008 WL 5231831, at *4 (E.D.N.Y. Dec. 11, 2008); In re Pfohl Bros. Landfill Litig., 175 F.R.D. 13, 20 (W.D.N.Y. 1997).

For the reasons stated, the circumstances and reasoning of Woodbury are distinguishable from the circumstances of this case. The reasoning and holding of Woodbury does not alter the Court's prior decision. Accordingly, the Court adheres to its prior Ruling that Savalle has failed to meet his burden of establishing the applicability of the attorney-client privilege to the documents at issue.

### B. Relevance of Documents Sought

Savalle next asserts: "The Court properly understood that Savalle had questioned the relevance of the materials the

plaintiff sought, but may have missed the implication." Doc. #72 at 6.

In its prior Ruling, the Court did not reach the issue of relevance for two reasons. First, the Court declined to reach the question of relevance because "Savalle d[id] not sufficiently develop any argument directed to the relevance of the documents and/or testimony sought." Doc. #69 at 6. Savalle's motion for reconsideration now improperly attempts to plug gaps in his original, deficient argument, with respect to this issue. See Lopez, 375 F. Supp. 2d at 21–22.

The Court also declined to address the issue of relevance because "Savalle does not have standing to challenge the subpoena on the grounds of relevance." Doc. #69 at 6. Savalle asserts that he has standing to challenge the subpoena on the grounds of relevance because the emails sought "are functionally his emails[,]" and he therefore has a personal right to the emails. Doc. #72 at 7-8. Regardless of whether Savalle has standing to challenge the subpoena on the grounds of relevance (which the Court maintains he does not[1]), the fact remains that

---

[1] "Examples of such personal rights or privileges include the personal privacy right and privilege with respect to the information contained in psychiatric and mental health records, claims of attorney-client privilege, and other privacy interests, including those relating to salary information and personnel records." Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc., No. 12CV6383(JFB)(AKT), 2017 WL 1133349, at *5 (E.D.N.Y. Mar. 24, 2017) (citation and quotation marks

Savalle failed to present any cogent argument on this issue in his renewed motion to quash. As previously stated, Savalle's attempt to now fill the gaps in his original argument is plainly improper.

Accordingly, the Court adheres to its prior Ruling on the issue of relevance.

### C. Facts Proffered Purporting to Establish the Applicability of the Attorney-Client privilege

Finally, Savalle proffers certain unsworn facts which he contends "should suffice to show that the requested documents fall within the attorney-client privilege[.]" Doc. #72 at 8. Savalle asserts:

> If permitted, he would offer proof in the form of an affidavit that he is a man in his late sixties, that he never learned how to use and does not use a computer or email, that he has lived with Davis for years, that he makes his living with a backhoe and relies on Davis for all of the indoor aspects of his business, that he has been a client of the undersigned for about a decade, and has always communicated with the undersigned either by telephone of via Davis's email account.

Id. Notably, this proffer does not address the deposition testimony of Savalle, previously proffered by Main Street, that Davis "is not, nor has she ever been Savalle's employee." Doc. #67 at 2. Nor does it address the other deficiencies noted by

---

omitted)). Indeed, "[i]n order for a party to have standing to challenge a subpoena served on a non-party, there must be more than a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive." Id.

the Court in its prior Ruling concerning the applicability of the attorney-client privilege. See Doc. #69 at 13-14. Savalle also has not proffered any facts, now or in his prior motions, which would establish that Davis is his agent. See, e.g., Jolen, Inc. v. Brodie & Stone, PLC, 200 A.3d 742, 745 (Conn. App. 2018) ("setting forth the well-established elements required to show the existence" of a principal-agent relationship "under Connecticut law[]").

Regardless, even if Savalle had presented such facts in a sworn affidavit, any such efforts made through the motion for reconsideration would be an improper attempt to take a second bite of the proverbial apple. See Analytical Surveys, 684 F.3d at 52.

**IV. Conclusion**

For the reasons stated, the Court **GRANTS** Savalle's motion for reconsideration [**Doc. #72**], and adheres to its prior Ruling.

On November 9, 2019, the Court extended the deadline by which Savalle was to disclose the contested documents to November 15, 2019. [Doc. #71]. In light of the timing of this Ruling, the Court hereby extends that deadline to the close of business on **November 18, 2019.**

SO ORDERED at New Haven, Connecticut this 15th day of November, 2019.

                                                       /s/
                                HON. SARAH A. L. MERRIAM
                                UNITED STATES MAGISTRATE JUDGE